Emma Brewster BARFIELD, Plaintiff,

v.

BELL SOUTH TELECOMMUNICA-
TIONS, INC. d/b/a South Central Bell
Telephone Company, Defendant.

Civ. A. No. 4:93CV103(L)(N).

United States District Court,
S.D. Mississippi,
Eastern Division.

April 21, 1995.

James A. Williams, James A. Williams, Meridian, MS, for plaintiff.

William T. Siler, Jr., Phelps, Dunbar, Jackson, MS, Benjamin A. Hardy, Jr., Bellsouth Telecommunications, Inc., Birmingham, AL, Paul T. Stagliano, Bellsouth Telecommunications, Atlanta, GA, for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

On July 23, 1993, after having been counseled on the subject and following several warnings and two suspensions, plaintiff Emma Brewster Barfield was discharged from her job with Bell South Telecommunications, Inc., d/b/a South Central Bell (SCB) for excessive absenteeism. She filed this lawsuit charging that her termination violated the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (ADA). While she acknowledged the fact of her poor attendance, she maintained that under the ADA, SCB was required to make "reasonable accommodations" for her absenteeism since the predominant cause for her absences was a disability from which she suffered, namely, migraine headaches. Subsequently, plaintiff amended her complaint to charge that she was retaliated against because she filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging disability discrimination. The case is now before the court on SCB's motion for summary judgment. Plaintiff has responded to the motion, and the court, having considered the parties' memoranda of authorities, together with attachments, concludes that SCB's motion is well taken and should be granted.

The following facts are undisputed. Plaintiff first went to work for SCB as an operator at its Meridian office in 1971, and over the years, held various positions with the company. In 1989, she began working as a service representative in the Meridian Consumer Services office, with responsibility for handling telephone inquiries from residential customers concerning their service orders, billing inquiries and similar matters. In January 1992, Gail Lynch took over the position of Assistant Manager and thereby became the plaintiff's immediate supervisor. Upon assuming that position, Lynch reviewed the plaintiff's attendance record and discovered that she had been absent for 19.5 days on 7 "occurrences" during the preceding 12 months. On January 20, 1992, Lynch met with plaintiff and counseled her about the

need to improve her attendance.[1] Over the next three months, plaintiff missed 5.5 more days on 2 occurrences, precipitating a warning by Lynch on April 20 about plaintiff's attendance. On August 11, plaintiff was suspended for a day for having failed to improve her attendance; she had missed 6.5 days on 4 occurrences since the warning of April 20. She was again suspended on October 7 (for two days), and on October 23 (for two weeks), for missing more work.

In February 1993, Barfield filed a charge with the EEOC alleging that each of these suspensions violated the ADA, since her absences were due to migraine headaches. While SCB awaited the outcome of plaintiff's charge before the EEOC, it took no further action against the plaintiff, despite her continued absenteeism. However, on July 29, a few weeks after the EEOC issued its determination finding no violation of the ADA, plaintiff was terminated for the reason of continued excessive absenteeism; during the period from October 23, 1992 to July 29, 1993, plaintiff had missed another 40.5 days of work on 19 occurrences.

As the court has indicated, plaintiff complains in this action that she was discharged in violation of the ADA. The ADA prohibits covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual" in regard to various facets of the employment relationship, including discharge.[2] 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions" of the position that the individual holds. *Id.* § 12111(8). In the event a qualified individual cannot perform the duties of her job without reasonable accommodations, the ADA requires that the employer "mak[e] reasonable accommodations to the known physical or mental limitations of [such] individual ... who is an ... employee," unless it "can demonstrate that the ac-

commodation would impose an undue hardship on the operation of [its] business." *Id.* § 12112(b)(5)(A).

A plaintiff alleging disability discrimination under the ADA has the burden to prove that she is a "qualified individual with a disability" under the Act. *Id.* § 12112(a). That is, she must establish that she is "disabled" and "qualified" to perform the essential functions of the job at issue, either with or without reasonable accommodation. If she carries her burden, then the employer must show either that it provided a reasonable accommodation to her or that accommodating her disability would have caused the company undue hardship. *Id.* § 12112(b)(5)(A).

 SCB has moved for summary judgment challenging the sufficiency of plaintiff's proof on each element of her claim. It contends that she does not have a disability within the meaning of the ADA, and that she is not qualified to perform the essential functions of the job. It further submits that the only possible accommodations which could be made to facilitate the plaintiff's continued employment as a service representative would indeed subject it to undue hardship. The first issue for the court is whether plaintiff has adduced sufficient proof that she suffers from a "disability" to withstand defendant's motion. And in the court's opinion, she has not.

A "disability" under the ADA is:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

*Id.* § 12102(2); *see also* 29 C.F.R. § 1630.2(g). Defendant concedes, solely for purposes of its motion, that plaintiff's migraine headaches would qualify as an "impairment" within the contemplation of the Act. However, an "impairment" is consid-

---

1. It is undisputed that the Company's progressive disciplinary steps—counsel, warn, suspend and terminate—apply to attendance problems.

2. The Act proscribes disability discrimination with regard to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

ered a "disability" only if it "substantially limits one or more of the major life activities" of the impaired individual. Interpretive regulations promulgated by the EEOC provide guidance as to the meaning of these terms.[3] "Major life activities" are the basic activities that the average person can perform with little or no difficulty, 29 C.F.R. Part 1630, Appendix, § 1630.2(i), "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). But one whose impairment merely affects one or more major life activities is not disabled. Rather, an individual is disabled for purposes of the ADA only if her impairment "substantially limits" a major life activity which, in that it either makes the individual either unable to perform a major life activity, or severely restricts her ability to perform a major life activity as compared to the general population. See 29 C.F.R. § 1630.2(j)(1). The court, having considered the materials submitted by the parties, concludes that plaintiff's evidence is not sufficient to support a finding that her headaches substantially limit a major life function.

In her brief, plaintiff argues that her headaches "substantially limit" the "major life function" of working. In fact, her argument that she is disabled centers exclusively on the limitations which she contends her headaches have on her ability to work as a SCB service representative; she does not identify any other major life function that she contends has been affected, much less substantially limited, by her headaches. However, while her brief says nothing of such matters, plaintiff has submitted a sworn statement in which she recites that her constant headaches have "limited [her] life, not just keeping me from being able to work, but also doing things that I want to do that other people simply take for granted." Since the EEOC's Interpretive Guidelines proclaim

that an individual's ability to perform the major life activity of working should only be considered if the individual is not substantially limited in any other major life activity, 29 C.F.R. Part 1630, Appendix § 1630.2(j), and since plaintiff is arguably asserting that her headaches substantially limit her ability to perform major life activities other than working, the court hesitates to dismiss that possibility without comment.

■ The determination of whether an impairment significantly limits a major life activity is made on a case-by-case basis, and depends on the nature and severity of the individual's impairment, its duration or expected duration, and its actual or expected permanent or long-term impact on the individual. 29 C.F.R. § 1630.2(j)(2). The court assumes, for present purposes, that plaintiff will be permanently afflicted with headaches since, according to plaintiff, she has had them since she was a little girl.[4] The more pertinent inquiry in this case, though, relates to their severity and duration. Initially, the court observes that plaintiff has presented no medical proof that her headaches impose any limitations on her, much less that they are so severe on such a consistent basis as to substantially limit her ability to perform any major life activities. However, plaintiff has undertaken to describe how her headaches affect her. In her statement, plaintiff says that sometimes, she has only a "little dull ache." There are times, though, when her headaches are so severe that she does not feel well enough to cook, read or drive. Her more intense headaches may be accompanied by nausea and vomiting, especially in the morning, which can make her unable to eat breakfast, or may require her to take more time getting dressed. Apparently, plaintiff usually attends church, though in her affidavit, she recounts an occasion on which she missed church because of a headache that

3. The EEOC, in accordance with the provisions of the ADA, 42 U.S.C. § 12206(c)(2)(A), has published regulations to assist in understanding the responsibilities of entities covered by the Act. Those regulations are found at 29 C.F.R. § 1630.1 through 1630.16. The EEOC has also issued an "Interpretive Guidance on Title I of the ADA," which appears as an appendix to 29 C.F.R. Part 1630.

4. Plaintiff has not presented medical evidence which fully substantiates her contention that she suffers from "migraine" headaches. The medical records she has submitted reflect a history of headaches, the etiology of which is unknown.

caused her to black out. She also recounts instances when her headaches have caused her to miss planned outings, and she says that there are times when she has had to have someone "sub" for her on her Friday night bowling team.

Thus, plaintiff has presented proof that her headaches are sometimes so intense that they prevent her from performing some basic life functions. But there is no proof as to the frequency with which headaches of such an intensity occur. Nor has plaintiff presented proof as to the duration of such episodes. For these reasons, the court views her proof as insufficient to support a finding that her impairment substantially limits a major life activity other than working. That brings the court to the issue of the effect of plaintiff's headaches on her working.

■■■■ With respect to that major life activity, the EEOC's regulations explain that

the term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). Here, plaintiff submits that since her headaches "directly cause[d] sporadic and unpredictable absences from work," they have obviously affected her ability to work.[5] Yet the fact that plaintiff may be unable to perform, and hence was absent from the particular job of service representative with SCB does not mean that she has a disability within the meaning of the ADA. The regulations provide that the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. 29 C.F.R.

§ 1630.2(j). Of course, an individual does not have to be totally unable to work to be substantially limited in this major life activity. *Id.* But, as the regulations state, to warrant a finding of disabled, plaintiff must show that she is significantly restricted in the ability to perform *a class of jobs* or *a broad range of jobs in various classes.* This, she has not done. Plaintiff takes the position that her headaches have limited her ability to talk on the telephone with customers while sitting at her computer. She has argued, though, that there were other tasks, such as filing, which she could perform while "off load." Thus, while her headaches may prevent her from talking to customers while stationed at a computer terminal, plaintiff has not shown that they preclude her from performing a wide range of jobs. Accordingly, the court concludes that plaintiff has not shown that she has a disability cognizable under the ADA.[6]

■■■■ Taking the analysis a step further, the court observes that even if plaintiff were to prove that she suffers from a disability, she still would not be able to establish an ADA violation since she has not shown that she is otherwise qualified to perform the essential functions of the job of service representative, whether with or without reasonable accommodation. Manifestly, an individual who is disabled still must be able to perform the essential functions of her job to receive the protection afforded by the ADA. This means that the individual must be "able to meet all of a program's requirements in spite of his [disability]." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). Thus, to determine whether the plaintiff was qualified for the position of service representative, the court must ask:

(1) whether she could "perform the essential functions of the job, i.e., functions that

---

**5.** The court would note that while plaintiff attributed most of her absences to headaches, she had many absences for other reasons.

**6.** The EEOC likewise concluded that plaintiff had not shown that she suffered from a disability. In its determination letter, the EEOC explained:

The medical and testimonial evidence does not show that Charging Party's migraine headaches substantially limit one or more of the

major life activities, nor is her condition regarded as an impairment under the statute. The parties dispute the weight, if any, to be given this finding by the EEOC. The court need not reach that issue for it concludes, without reference to the EEOC's determination, that plaintiff has not presented adequate evidence of disability.

bear more than a marginal relationship to the job at issue," and (2) if not, whether "any reasonable accommodation by the employer would enable [her] to perform those functions."

*Tyndall v. National Educ. Centers,* 31 F.3d 209, 213 (4th Cir.1994) (quoting *Chandler v. City of Dallas,* 2 F.3d 1385, 1393–94 (5th Cir.1993)). Many courts have held, both under the Rehabilitation Act and the ADA,[7] that employees who are disabled cannot prove that they can adequately perform the essential functions of a job without showing they can maintain a regular and dependable level of attendance at that job. *See, e.g., Jackson v. Veterans Admin.,* 22 F.3d 277, 278–79 (11th Cir.1994) (employee with numerous sporadic absences not "otherwise qualified" under Rehabilitation Act); *Tyndall,* 31 F.3d at 213 ("[A]n employee must be willing and able to demonstrate ... skills [necessary to perform the job at issue] by coming to work on a regular basis."); *Carr v. Reno,* 306 U.S.App.D.C. 217, 23 F.3d 525, 529 (D.C.Cir.1994) ("essential function of any government job is an ability to appear for work"); *Law v. United States Postal Serv.,* 852 F.2d 1278, 1279–80 (Fed.Cir.1988) ("an agency is inherently entitled to require an employee to be present during scheduled work times"); *Kennedy v. Applause, Inc.,* No. CV 94–5344 SVW (GHKx), 1994 WL 740765, 1994 U.S.Dist. LEXIS 19216 (C.D.Cal. Dec. 6, 1994) (disabled employee cannot establish that she can perform essential functions of job without proving predictable and reliable level of attendance); *EEOC v. AIC Sec. Investigation,* 820 F.Supp. 1060, 1064 (N.D.Ill.1993) (for ADA purposes, "attendance is necessary to any job...."); *Walders v. Garrett,* 765 F.Supp. 303, 309 (E.D.Va.1991) ("few would dispute that, in general, employees cannot perform their job successfully without meeting some threshold of both attendance and regularity."), *aff'd,*

956 F.2d 1163 (4th Cir.1992); *Santiago v. Temple Univ.,* 739 F.Supp. 974, 979 (E.D.Pa. 1990) ("Attendance is necessarily the fundamental prerequisite to job qualification"), *aff'd,* 928 F.2d 396 (3d Cir.1991); *Wimbley v. Bolger,* 642 F.Supp. 481, 485 (W.D.Tenn. 1986) (An employee who "does not come to work cannot perform any of his job functions, essential or otherwise"), *aff'd,* 831 F.2d 298 (6th Cir.1987). This court recognizes, as did the courts in each of the cited cases, that regular attendance at work is an essential function of virtually all jobs. Plaintiff argues, however, that while predictable attendance may be an essential function of most jobs, it is not for a service representative with SCB. She submits that her primary charge as a service representative is to make sales to customers, and she points out that her sales performance was "superb" despite her absenteeism. From this, she reasons that regular attendance must not have been an essential function of her job. Two facts belie plaintiff's position on this point. First, while it may well be true that plaintiff attained her sales objective during each month of her tenure as a service representative, according to the affidavit of plaintiff's supervisor, Gail Lynch, and of the plaintiff herself, the sales objective for service representatives is tied to the employee's "actual time [spent] on line." In other words, sales objectives were related to the amount of time the employee actually worked on line.[8] But what is more significant, though, is the fact that sales, while perhaps important, was only one of a service representative's functions. Another equally important, if not more important facet of the service representative's job is dealing with customers' complaints and inquiries. And there is uncontroverted proof that there is a direct correlation between the number of service representatives available at a given time to answer customers' telephone calls and the amount of time customers must wait to have their calls answered.[9]

---

**7.** The ADA specifically contemplates reliance on authorities interpreting the Rehabilitation Act. *See* S.Rep. No. 116, 101st Cong., 1st Sess. at 21 (1989); H.R.Rep. No. 485 Part 2, 101st Cong., 2d Sess. at 50 (1990), U.S.Code Cong. & Admin.News 1990, p. 267.

**8.** It is undisputed that when plaintiff was present at work, she was fully competent to perform the

functions of her job. The issue presented by the parties, though, is whether her attendance at work was essential to her performance of the job.

**9.** Plaintiff also posits that attendance is not, in fact, the "end-all and be-all" of a service representative, as evidenced by the fact that her immediate supervisors were given absolute discretion over "coding" her absences and thus controlled

Based on the unrefutable facts, the court concludes as a matter of law that regular and predictable attendance is an essential function of the job of service representative with SCB. The question thus becomes whether there was a reasonable accommodation that SCB could have made that would have allowed the plaintiff to perform her job. In this vein, plaintiff suggests that SCB could simply never put her on a work schedule and allow her to work only when she is able to. This way, on the days when she feels up to it, she could work all day "on load," even to as late as 10:00 p.m., and get her hours in; on the days she feels too ill to work, she could simply stay at home. In other words (and as defendant correctly comprehends the argument), SCB should never count on her working and performing her job, but should instead allow her to work when she feels like it. This is unreasonable and not an accommodation SCB should be required to make. The court recognizes that "job restructuring" or "part-time or modified work schedules" are included in the ADA's definition of "reasonable accommodation." *See* 42 U.S.C. § 12111(9)(B). But plaintiff asks too much of SCB. A number of courts have held that "open-ended 'work when able' schedules" are not reasonable accommodations. *See, e.g., Carr,* 23 F.3d at 530; *Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 878 n. 8 (9th Cir.1989); *Kennedy,* 1994 WL 740765, at *6, 1994 U.S.Dist. LEXIS 19216, at *21; *but cf. Dutton v. Johnson County Bd. of County Com'rs,* 859 F.Supp. 498, 504 (D.Kan.1994). The observation by the *Carr* court pertains here:

Such accommodations (as those suggested by plaintiff) do not address the heart of the problem: the unpredictable nature of [plaintiff's] absences. Requiring the [em-

ployer] to accommodate such absence would place upon the agency the burden of making last-minute provisions for [plaintiff's] work to be done by someone else. Such a requirement would place an undue hardship on the [employer].

*Jackson,* 22 F.3d at 279.

Based on the evidence of record, the court concludes that plaintiff does not suffer from a disability within the meaning of the ADA, and further, that as a consequence of her alleged inability to maintain regular and predictable attendance at her job with SCB, she is not otherwise qualified to perform the essential functions of her job. Accordingly, the court concludes that plaintiff's cause of action for a violation of the ADA must be dismissed.

 The court likewise concludes that plaintiff's claim of retaliation should be dismissed. To establish a prima facie case of retaliation, plaintiff must prove that she engaged in activity protected by the ADA, that an adverse employment action occurred, and that there exists a causal link between the protected activity and the adverse employment decision. *See Anderson v. Douglas & Lomason Co.,* 26 F.3d 1277, 1300 (5th Cir. 1994). Clearly, plaintiff engaged in protected activity, and obviously, an adverse employment action occurred. There is, however, no causal link between the two. In fact, plaintiff herself admitted in her deposition testimony that she was disciplined and ultimately terminated because of her poor attendance. When asked whether she believed she would have been disciplined had her attendance been satisfactory, plaintiff responded, "No."[10] There just is no reasonable basis for a finding of retaliation. Even before plaintiff filed her EEOC charge, SCB

those absences which counted against her and those which did not. The logic of this argument evades the court, for with one possible exception, plaintiff has not and cannot show that she was ever the victim of improper coding by her superiors. Moreover, the fact that supervisors at SCB have some discretion in the coding of absences does not in any way diminish the importance of attendance. In fact, SCB's attendance policy stresses the need for regular attendance by its employees, stating:

IF A WORK GROUP CAN TOLERATE EXCESSIVE ABSENCES AND STILL MEET ITS OBJECTIVES, IT IS OVER–STAFFED.

For these reasons, plaintiff's argument in this regard is patently without merit.

10. It is true that SCB waited to discharge plaintiff until after the EEOC issued its determination. That fact, however, does not suggest any link between plaintiff's filing of the charge and her dismissal. Indeed, SCB's decision to wait on a ruling by the EEOC appears to have been calculated to prevent any violation of plaintiff's rights.

had not only started but was far down the path of progressive disciplinary action which plaintiff well knew would culminate in her termination if her attendance did not improve. And it is undisputed that her attendance did not improve. It is that fact alone which caused SCB to take the final step, and not retaliation for her filing of an EEOC charge.

Based on the foregoing, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.