**Steven H. COKER, Plaintiff,**

v.

**TAMPA PORT AUTHORITY, Defendant.**

No. 95–1231–CIV–T–24C.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 4, 1997.

Howard J. Shifke, Tampa, FL, for plaintiff.

Charleen Catherine Ramus, Anderson & Orcutt, P.A., Tampa, FL, for defendant.

## ORDER

JENKINS, United States Magistrate Judge.

Before the court is Defendant's Motion for Summary Judgment (Dkt.16), plaintiff's response (Dkt.18), the supplemental memoranda filed by the parties (Dkt.23 and 27), and the depositions and evidence submitted in support of each.[1]

Plaintiff filed this action against defendant for discrimination in violation of the American with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. Plaintiff contends that defendant maintained a hostile work environment and discriminated against plaintiff because of his back condition.

## BACKGROUND FACTS

Plaintiff, Steven Coker, was hired by defendant Tampa Port Authority on January 3, 1989. Plaintiff worked as a multi-trades worker I in the maintenance department throughout his employment with defendant. During his employment with defendant, plaintiff suffered back injuries on three separate occasions.

Plaintiff's first injury occurred in November 1990 while climbing down a ladder at work. Plaintiff missed a rung and pulled his back. The second incident occurred on April 20, 1993 when plaintiff stepped off a corner of a ramp at work and felt a pull in his low back. He was treated at the facility and returned to work. Plaintiff's third injury occurred on October 29, 1993 when he pulled his back while lifting a pressure washer off a truck. After missing several days of work, plaintiff was placed on light duty.

---

1. The parties have consented to proceed before the Magistrate Judge pursuant to Tile 28, United States Code, Section 636(c) and Fed.R.Civ.P. 73.

Plaintiff underwent a functional capacities assessment evaluation at Tampa General Hospital on November 12, 1993. He was then placed in a work hardening program. After completion of the work hardening course, plaintiff was released to return to work in maintenance.

Plaintiff resigned on February 17, 1995 due to an allegedly hostile work environment. Plaintiff was issued a right-to-sue letter on May 2, 1995.

Plaintiff filed this action on July 28, 1995 alleging hostile work environment and constructive discharge. The constructive discharge claim contained in count II of the complaint was dismissed by the district court on March 19, 1996.

## DISCUSSION

Defendant moves for summary judgment for failure to raise any genuine issue of material fact. *See* Rule 56, Fed.R.Civ.P. Summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. Rule 56(c), Fed.R.Civ.P.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608–09 (11th Cir.1991). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995) (citations omitted).

The court's function in a summary judgment proceeding is to determine whether there exists a genuine issue of material fact; the court cannot weigh conflicting affidavits and depositions to resolve disputed fact issues. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1298–9 (11th Cir.1983); *see also Henley v. Lokey Oldsmobile–Countryside, Inc.*, 817 F.Supp. 938, 941 (M.D.Fla.1993) (where deposition testimony conflicts resulting in factual disputes, summary judgment must be denied).

Defendant's sole contention is that plaintiff does not have a "disability" within the meaning of the ADA. Defendant argues that plaintiff's back condition is a soft tissue injury that does not substantially limit one or more of plaintiff's major life activities.

Plaintiff responds that his back condition is a disability under the ADA as his impairment affects his ability to walk, stand, sit, lift, get out of bed, or perform repetitive motions. He further argues that the evidence supports his allegations of a permanent back injury.

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees ..." 42 U.S.C. § 12112(a). Under the Act, "disability" means: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).

Major life activities include but are not limited to "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i).

To establish a prima facie case of discrimination in violation of the ADA, plaintiff must prove that: he has a disability; he is otherwise qualified to perform the essential functions of the employment, with or without reasonable accommodations; and he suffered discrimination because of his disability. *See Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir.1996); *Patterson v. Downtown Medical & Diagnostic Center*, 866 F.Supp. 1379, 1381 (M.D.Fla.1994).

Plaintiff must first demonstrate that he is "disabled" within the meaning of the ADA. Plaintiff alleges that he is disabled as he has an impairment that substantially limits one or more of his major life activities.

"Substantially limits" means:

i) Unable to perform a major life activity that the average person in the general population can perform; or

ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The following factors are considered in determining whether an impairment substantially limits one's ability to perform major life activities: 1) the impairment's nature and severity; 2) the impairment's duration or expected duration; and 3) the impairment's permanent or long term impact. 29 C.F.R. § 1630.2(j)(2).

Plaintiff testified at his deposition that he left defendant's employ on February 17, 1995 and subsequently signed up for work as a boilermaker. He stated that thereafter he worked in South Bay Florida as a boilermaker from March 20, 1995 through June 1, 1995.[2] (DX p. 9)

Plaintiff testified that his impairment consists of low back strain. He was not sure if his injury would heal over time. (DX p. 17–20) Plaintiff, however, testified that he received a letter from worker's compensation stating that he had a permanent impairment. (DX p. 41)

Plaintiff testified regarding several accidents that occurred while working for defendant. According to plaintiff, the first incident occurred in November 1990 while plaintiff was climbing from a compactor to a ladder and missed the second rung which caused him to pull his back. He was treated and was out of work for three days but was not given any long term restrictions. (DX p. 29–31)

His next injury occurred when he stepped off a ramp and twisted his back. He was out of work for two or three days but not given any long term restrictions. (DX p. 31–33)

Plaintiff's third injury to his back occurred in October 1993 while lifting a pressure washer. Another employee who was helping plaintiff lift the washer lost his grip on the washer which caused plaintiff to strain his back. Plaintiff testified that after this incident he was out of work for two or three days. He was then placed on light duty. (DX p. 33, 40)

Plaintiff testified that after the third incident he participated in a work hardening program but has not participated in a rehabilitation program since he left his employment with defendant. He explained that he still performs the exercises from the work hardening program at home. After he completed his work hardening course, plaintiff was released to return to work in maintenance. (DX p. 17–20, 42)

Plaintiff testified that his back condition impairs his ability to walk to the extent that his muscles "tighten up" and he experiences a sharp pain when he walks one or two miles. He admitted that he can usually walk a block without a problem and his job as a multi trade worker did not necessarily require walking a mile. (DX p. 21–22)

Plaintiff further testified that he has no problem climbing and can take care of his personal needs. He felt he could squat but explained that "[s]ometimes when I step off a curb, my back will go out." (DX p. 24) He stated that he no longer participates in sports such as softball or volleyball because he doesn't want to "take the risk of throwing his back out in case a job comes up." (DX p. 26) He also testified that he cannot sit for more than an hour without getting up to stretch his back. Further, he cannot "roughhouse" with his children, pick up and toss his daughter in the pool, or waterski. (DX p. 55, 58)

Plaintiff also testified that he can perform some lifting tasks but thought that repetitious lifting would aggravate his back. He stated that he has no problems driving. (DX p. 57) While he does not do the grocery shopping, plaintiff thought he could perform this activity. (DX p. 58) Plaintiff testified that he does not take medication other than aspirin, Advil or Tylenol and that the only time he experiences a problem "getting

---

**2.** Neither party has submitted plaintiff's deposition in its entirety.

around" is when he has a muscle spasm. (DX p. 57)

Plaintiff testified regarding two incidents that occurred since leaving defendant's employ. He explained that in October 1995 he was replacing the brakes on his truck and his back "wrenched up". This caused him to be unable to report to a job the next day. (DX p. 23–24) Further, on another occasion plaintiff had a job which required eight hours of continuous squatting, lifting and carrying. The following morning he had to roll over onto one knee to get out of bed. He then spent the remainder of the day sitting on the couch with his feet up. (DX p. 27–28)

After plaintiff's accident on October 29, 1993, Donald Grubb, A.R.N.P., with Tampa General Hospital, diagnosed plaintiff as having an "ls sprain with paraspinous muscle spasm".[3] He restricted plaintiff from working for four days. On November 4, 1993 Grubb placed plaintiff on light duty and advised plaintiff not to stoop, bend, or lift greater than 15 pounds. On November 11, 1993 Grubb referred plaintiff for a functional capacity evaluation. (PX)

The results of plaintiff's November 12, 1993 functional capacity test indicate that plaintiff had difficulty reaching overhead, stooping, walking, kneeling and crouching and could not tolerate bending and squatting. While plaintiff lifted 38 pounds, it was opined by Kristin Hasselschwert, M.S. and Xavier Gonzales, P.T., that plaintiff could not return to work in the multi-trades worker II position at that time. (PX)

Plaintiff's lifting evaluation showed that plaintiff could not "perform many lifting tasks safely." It was further noted that plaintiff had: 1) decreased functional capacities specific to stooping, crouching, bending, squatting, lifting and carrying; 2) decreased range of motion in the thoraco-lumbar spine, 3) decreased hamstring flexibility; 4) decreased manual dexterity; 5) total body deconditioning; and 6) questionable tolerance to an 8 hour day. It was recommended that plaintiff undergo physical reconditioning or a work hardening program. Plaintiff was returned to modified duty and prohibited from climbing and lifting more than 45 pounds. (PX)

Frank K. Kriz, J.R., M.D., orthopedic surgeon, examined plaintiff on September 11, 1996. Dr. Kriz noted that plaintiff complained that his back bothers him if he does anything repetitious and that he gets spasms and severe pain when he steps off a curb. Plaintiff told Dr. Kriz that he had spasms and severe pain approximately four times since leaving defendant's employ.

Plaintiff's muscular skeletal examination was normal. Dr. Kriz opined that plaintiff's complaints were not supported by the physical examination findings. He further opined that plaintiff "is fit to engage in employment as a boiler maker" and that plaintiff was physically fit to perform strenuous physical activity. Dr. Kriz also opined that plaintiff "has no impairment or disability to prevent his participation in all 'major life activities' without any limitations."

Dr. Kriz explained that plaintiff's subjective complaints were due to his physical status and posture (i.e. his protruding abdomen) and that his condition is temporary. He indicated that plaintiff's condition is controllable by plaintiff's activities and motivation. Dr. Kriz did not place any restrictions on plaintiff's activities or employment and opined that "the more physically active the patient is the healthier he will be."

■ Plaintiff also submitted a letter dated May 24, 1994 to plaintiff from an adjuster at Insurance Servicing & Adjusting Company. The adjuster states that "[y]our doctor has reported that you have completed treatment and may return to work, but that you will have some permanent impairment from your on-the-job-accident." (PX A)

■ Defendant contends that the letter contains inadmissible hearsay and cannot be considered. In deciding a motion for summary judgment, the court may not consider inadmissible hearsay that is not reducible to admissible form at trial. *McMillian v. Johnson*, 88 F.3d 1573, 1583–85 (11th Cir.1996); *cert. granted*, —— U.S. ——, 117 S.Ct. 554, 136 L.Ed.2d 436 (1996); *Pritchard v. Southern Co. Serv.*, 92 F.3d 1130, 1135 (11th Cir.

---

**3.** Grubb's occupational title is unclear. While plaintiff refers to him as "Dr. Grubb", the medical reports submitted by plaintiff refer to Grubb as an "ARNP".

1996), *amended by*, 102 F.3d 1118 (11th Cir. 1996).

Here, there is no suggestion that the hearsay statement regarding plaintiff's permanent impairment cannot be reduced to admissible form at trial through the doctor's testimony. *See e.g. McMillian*, 88 F.3d at 1585. Accordingly, this court will consider the letter.

■ Defendant first argues that plaintiff does not have a disability because his back condition is only temporary in nature. Plaintiff, however, has submitted evidence in the form of the above-referenced letter that he is permanently impaired. Nonetheless, as there are three criteria for determining whether an impairment substantially limits one's ability to perform major life activities, *see* 29 C.F.R. § 1630.2(j)(2), the court does not find plaintiff's evidence of permanent impairment dispositive of the issue of whether he suffers from a disability.

Defendant points out the case of *Kindle v. Mid–Central/Sysco Food Serv., Inc.*, Case No. 95–2123, 1996 WL 99766 (D.Kan. Feb.2, 1996), in which the court granted summary judgment in favor of defendant on plaintiff's claim under the ADA even though the plaintiff had a 30 percent permanent partial back disability. The Kindle court found that the plaintiff "failed to produce evidence showing a significant restriction in his ability to perform either a class of jobs or a broad range of jobs in various classes" and, further, "did not indicate the duration or long-term impact of any impairment". *Id.* at *7.

■ It appears that the *Kindle* court only considered whether the plaintiff was substantially limited in his ability to work and did not first consider whether the plaintiff was substantially limited in any major life activity other than working. According to 29 C.F.R. pt. 1630, app. § 1630.2(j), "[i]f an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working." As such, this court cannot consider whether plaintiff is substantially limited in his ability to work without first determining whether genuine issues of material fact remain regarding his ability to perform other major life activities.

Defendant further argues that plaintiff has not attempted to engage in sporting activities since he was injured, and, therefore, cannot show that he is limited in these activities. Finally, defendant argues that plaintiff's inability to perform a certain task does not render him disabled under the ADA.

The majority of the cases relied upon by defendant are distinguishable on their facts. For instance, the court in *Maloney v. Barberton Citizens Hosp.*, 109 Ohio App.3d 372, 672 N.E.2d 223, 225–27 (9 Dist.1996), in finding that the plaintiff was not disabled, noted that the plaintiff admitted that her injury was only temporary and that she "no longer suffered from any residual effects." Similarly, in *Gibson v. Simonds Industr., Inc.*, Case No. 95–060040, 1996 WL 5662, *3 (Ohio App. 5 Dist. Jan.2, 1996), the court, in relying on plaintiff's testimony that he could do regular work and could perform his job even with restrictions, found the plaintiff was not disabled.

Here, plaintiff does not contend his back condition is temporary. Further, while plaintiff testified about his past injuries to his back, he indicated that he continues to suffer from a back condition. Specifically, plaintiff testified that his back condition still affects his ability to walk, sit, get out of bed, lift repeatedly and play sports.

At his deposition, plaintiff was asked the following question:

"In paragraph of your Complaint, you said the Plaintiff [sic] back injuries substantially interfere with one or more of Plaintiff's daily major life activities. What are you referring to there?"

Plaintiff responded "I'm referring to like softball and my sporting activity." Plaintiff explained that he was also referring to activities such as waterskiing and grocery shopping though he conceded that he could probably do the latter so long as he restricted his lifting. (DX p. 58)

■ The inability to play sports does not constitute a substantial impairment of a major life activity. *Weaver v. Florida Power & Light*, Case No. 95–8519, 1996 WL 479117,

\*7 (S.D.Fla. July 16, 1996). Further, "[l]ifting restrictions do not constitute a substantial limitation on a major life activity." *Id.* (citation omitted); *see also Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir.1996) (inability to lift 44–56 pounds for more than one to three and one-half hours a day did not render plaintiff substantially limited in a major life activity). Accordingly, the court rejects plaintiff's claim to the extent that he relies on his inability to lift and participate in sports.

Plaintiff also testified that his condition affected his ability to walk but that he thought he could walk one to two miles. (DX p. 22) Further, he testified that he sometimes has difficulty getting out of bed, but stated that "[o]nce I'm up and straightened up, I usually can work it out." (DX p. 28) He complained that sitting or standing too long causes him to be "not very comfortable". He explained that he thought he could sit an hour before having to stand up and stretch. (DX p. 55)

▮ Walking and sitting are major life activities. 29 C.F.R. § § 1630.2(i); 29 C.F.R. pt. 1630, app. §§ 1630.2(i). Nonetheless, "one whose impairment merely affects one or more major life activities is not disabled." *Barfield v. Bell South Tele., Inc.*, 886 F.Supp. 1321, 1324 (S.D.Miss.1995). Plaintiff must show that his back condition "substantially limits" one or more major life activities. 29 C.F.R. § 1630.2(j).

▮ Plaintiff has failed to submit any medical evidence supporting his claims that his back condition substantially limits his ability to perform major life activities other than work. While the medical evidence submitted by plaintiff establishes that he was given working restrictions after suffering a back injury in 1993, the evidence does not contain any references regarding long-term or permanent restrictions.[4] In fact, plaintiff admitted that he was released to his regular duties after completing a work hardening program in 1993. (DX p. 42)

Further, plaintiff has also failed to produce sufficient evidence regarding the frequency and duration of the occurrences which aggravate his back. While plaintiff testified regarding two incidents that occurred after leaving defendant's employ which caused him to be unable to work, he indicated that he recovered after one day of rest. Finally, plaintiff testified that the "only time I have [sic] problem getting around is if my back has a spasm". (DX p. 56)

Accordingly, the court finds that plaintiff has failed to sustain his burden of showing that his back condition substantially limits his ability to perform major life activities other working. *See e.g. Barfield*, 886 F.Supp. at 1324–25.

▮ When a plaintiff is not substantially limited in his ability to perform major life activities other than working, the court must then consider whether the plaintiff is substantially limited in working. *See* 29 C.F.R. pt. 1630, app. § 1630.2(j). Plaintiff has failed to offer any evidence showing that he is significantly restricted in the ability to perform a "class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *See Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907, 912 (11th Cir.1996) (citations omitted). As such, plaintiff has failed to meet his burden of showing that he suffers from an impairment that substantially limits his ability to work.

▮ Because plaintiff has failed to show that he has a disability, it is unnecessary for this court to determine whether he is a qualified individual or whether he was subjected to unlawful discrimination by defendant because of a disability. *Compare Harris v. H & W Contracting Co.*, 102 F.3d 516 (11th Cir.1996). Accordingly, defendant's motion for summary judgment is granted.

It is ORDERED that:

1) Defendant's Motion for Summary Judgment (Dkt.16) is GRANTED. The Clerk of Court shall enter final/judgment in favor of the defendant.

---

4. Plaintiff admitted that he was out-of-work for two or three days after his first two accidents, but was later released back to work with no limitations.