Anne **MULLER**, Plaintiff,

v.

**AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, a corporation, and Does 1 through 100, inclusive, Defendants.**

**Civ. No. 94–1181–R (CGA).**

United States District Court, S.D. California.

Sept. 15, 1995.

---

Jon Y. Vanderpool, Brown & Haskell, La Jolla, CA, for Plaintiff.

Cindy Cipriani, Gray Cary Ware & Friedenrich, San Diego, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S AMERICANS WITH DISABILITIES ACT CAUSE OF ACTION AND DISMISSING PLAINTIFF'S CAUSES OF ACTION BASED ON CALIFORNIA LAW

RHOADES, District Judge.

This matter comes before the Court on a motion for summary judgment filed by Defendant Automobile Club of Southern California. For the reasons given below, Defendant's motion for summary judgment is granted in part.[1] Defendant is entitled to summary judgment on Plaintiff Anne Muller's first cause of action for employment discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"). Plaintiff's ADA cause of action is her only cause of action based on federal law. This Court declines to retain jurisdiction over Plaintiff's remaining causes of action, all of which are based on California law.[2] Plaintiff's state law causes of action are dismissed without prejudice.

## I. Background

Plaintiff started working for Defendant in October 1977. Over the course of fifteen

---

1. Pursuant to Southern District of California Local Rule 7.1(d)(1), this Court finds this motion suitable for decision without oral argument.

2. Plaintiff's causes of action based on California law are for: harassment of disabled individual; breach of contract; tortious breach of the covenant of good faith and fair dealing; and wrongful termination in violation of public policy.

years, Plaintiff received a number of commendations and promotions. (Pl.'s Decl. ¶¶ 3–14.)

On April 26, 1993, everything changed. Plaintiff received a call from the son of an insured. The son, irate over Plaintiff's conclusion that his father would have to pay more than one deductible for damage arising from more than one accident, threatened Plaintiff. Plaintiff hung up on the caller, a Mr. Williams, but Williams called back a number of times on the afternoon of April 23. Among his threats, Williams told Plaintiff that he would meet her in the parking lot. An Escondido police officer escorted Plaintiff to her car at the end of the day. (Pl.'s Decl. ¶¶ 16–21.)

During the week following the threats, Plaintiff encountered what she considered to be insensitive conduct on the part of some of her co-workers. One, Escondido District Office Supervisor Jack Lape, asked Plaintiff, "Anne, did you wear your target today?" (Pl.'s Decl. ¶ 23.)

On May 3, 1993, Plaintiff and her assistant supervisor, Evelyn Blake, had a disagreement about preparing a claim file. Plaintiff, upset by the confrontation, left work early. (Pl.'s Decl. ¶ 24.)

Two days later, on May 5, 1993, Plaintiff met with Lape, Blake, and Frank Mieczkowski, a regional manager. At the meeting, Plaintiff learned that her superiors planned to treat Plaintiff's May 3 outburst as insubordination. Their decision further upset Plaintiff. Plaintiff told Lape, Blake, and Mieczkowski that she was suffering from fear and anxiety in the wake of the Williams' threats. (Pl.'s Decl. ¶¶ 25–26.) To make matters worse, Plaintiff's co-workers spotted Williams sitting at a lunch table near the Auto Club parking lot later that afternoon. (Pl.'s Decl. ¶ 27.)

On May 7, Plaintiff confronted Lape and Mieczkowski about Williams' presence on company property. According to Plaintiff, both Lape and Mieczkowski laughed, and Lape said that he told Williams where Plaintiff lived and the type of car she drove. (Pl.'s Decl. ¶ 28.)

On May 10, 1993, and May 11, 1993, Plaintiff met with Dr. Rosben Gutierrez for psychological counseling. Plaintiff states in her declaration that Dr. Gutierrez diagnosed a post-traumatic stress disorder and prescribed Klonopin and Paxil. (Pl.'s Decl. ¶ 30.) [3]

Plaintiff continued psychological counseling sessions with Dr. Gutierrez and with Dr. Martin D. Cary through May and into June. According to Plaintiff, the side effects of the medication impaired her ability to perform her job duties. She missed a number of days of work. In mid-June, an Auto Club representative informed Plaintiff that she would have to take a leave of absence. (Pl.'s Decl. ¶ 33.) Plaintiff commenced her leave of absence on June 15, 1993. Plaintiff never returned to work.

On July 26, 1993, Dr. J. Brand Brickman conducted a clinical psychiatric evaluation of Plaintiff. (Pl.'s Decl. ¶ 34.) In a report dated July 30, 1993, Dr. Brickman concluded that Plaintiff had a "Temporary Total Psychiatric Disability" brought about by the Williams incident. (Pl.'s Notice of Lodgment Ex. 1 at 6.)

Dr. Brickman and his colleagues Dr. Robert Zink and Lucinda Nerhood, L.C.S.W., counseled Plaintiff during July, August, and September. Dr. Brickman adjusted Plaintiff's medications to reduce the side effects. (Pl.'s Notice of Lodgment Ex. 1 at 7; Def.'s Notice of Lodgement Ex. 2 at 2.)

On Plaintiff's behalf, Dr. Zink and Plaintiff's workers' compensation attorney formulated a plan to make Plaintiff's return to work at the Auto Club possible and palatable. Among the items on Plaintiff's agenda were removing any reference to insubordination from Plaintiff's file, reviewing Defendant's safety procedures, and replacing Lape with another supervisor. (*See* Pl.'s Notice of Lodgment Ex. 2 at 60, 62, 68; Def.'s Notice of Lodgment Ex. 12 at 13, 24; Tsuida Decl. ¶ 4.)

---

**3.** Plaintiff has not submitted a declaration from Dr. Gutierrez regarding his diagnosis, nor has she supplied any deposition testimony from Dr. Gutierrez, nor has she supplied any medical records signed by Dr. Gutierrez.

Defendant acceded to most of Plaintiff's requests, even replacing Lape with Rod Middleswart, a manager from another office. (Pl.'s Decl. ¶¶ 37–38; Tsuida Decl. ¶¶ 5–7; Middleswart Decl. ¶ 2.) Plans for Plaintiff's return broke down, however, when Plaintiff and Carolyn Tsuida, the district office manager, did not reach a meeting of the minds about revisions to Auto Club safety procedures. (*See* Def.'s Notice of Lodgment Ex. 2 at 2.)

Plaintiff reported to Dr. Zink that her safety concerns had not been met. (*Id.*) Based on Plaintiff's continued concerns about her health, Dr. Brickman concluded in a September 20, 1993 report that Plaintiff could not return to work at the Auto Club. (*Id.* at 4.) Dr. Brickman's September 20, 1993 report, however, portrays Plaintiff as a patient on the mend. Dr. Brickman notes in the report that Plaintiff informed him that she felt "progressively more functional again" and that she was much less apprehensive. His report indicates that Plaintiff was sleeping better, enjoyed improved relations with her husband, had traveled with her family, and was going to Jazzercize classes. (*Id.* at 2.) Dr. Brickman also reports that upon psychological retesting, Plaintiff showed "substantial improvement in [her] mental state." Dr. Brickman diagnosed "Adjustment Disorder with anxiety and depression, in remission" and "Atypical Panic Disorder, in remission." (*Id.* at 3.) Importantly, Dr. Brickman found for the first time in his September 15, 1993 report that Plaintiff's psychiatric disability had become permanent and stationary. (*Id.*)

Dr. Brickman's report concludes with a discussion of Plaintiff's prospects for future employment:

> Concerning whether she can return to her usual and customary employment, I do not believe that this individual has significant restrictions concerning meeting the public in settings *other* than the Auto Club. However, her experiences with her employer following the recent threats at work make it impossible for her to return to work with the Automobile Club as an employee.... I do believe she could meet the public in most settings: her concerns

with security seem to be rather specifically associated with the Automobile Club, and have to do in part with the fact that other employees have been assaulted at the Automobile Club in the last few years.

(*Id.* at 4 (emphasis in original).)

During a December 15, 1994 deposition, Dr. Brickman reiterated his assessment that Plaintiff could hold a job that required public contact. (Def.'s Notice of Lodgment Ex. 11 at 21–22.) In fact, Dr. Brickman added that at the time he issued September 15 report, he believed that Plaintiff could return to the Auto Club if she did not have to have public contact there. (*Id.* at 21.) Dr. Brickman also stated during his deposition that he did not believe Plaintiff was limited in any of her major life activities as of the time he last saw her. (*Id.* at 23.)

Nevertheless, in light of Dr. Brickman's September 15, 1993 finding that Plaintiff could not return to her job at the Auto Club, Plaintiff's workers' compensation lawyer, Randall Mason, met with a workers' compensation adjuster, Diane Klatt, and Defendant's senior employment relations consultant, Kimberly Klink. Mason, Klatt, and Klink agreed that Defendant would provide vocational rehabilitation services to Plaintiff to prepare Plaintiff for a new line of work. (Def.'s Notice of Lodgment Ex. 10 at 125; Def.'s Notice of Lodgment Ex. 13 at 109–110.)

Plaintiff began her vocational rehabilitation in November 1993. Plaintiff received bookkeeping training. On February 24, 1994, Plaintiff told her vocational rehabilitation counselor that she had lined up a client for her new bookkeeping business. Plaintiff's vocational rehabilitation counselor then ended Plaintiff's vocational training. (Def.'s Notice of Lodgment Exs. 5–7.)

Plaintiff learned on March 4, 1994, that she had been "resigned" by Defendant as of February 28, 1994. (Pl.'s Decl. ¶ 45.)

Plaintiff filed a claim for disability discrimination with the Equal Employment Opportunity Commission ("EEOC") in June 1994. On June 17, 1994, Plaintiff met with EEOC Investigator Raul Green for an interview. (Pl.'s Decl. ¶ 46.) Green states in his declaration that Plaintiff admitted that her condi-

tion was temporary and did not affect her normal day-to-day functions outside of work. (Green Decl. ¶ 5.) Green informed Plaintiff that she was not a qualified individual under the ADA. (Green Decl. ¶ 6.) The EEOC "terminated its process" with respect to Plaintiff's claim and sent her a right to sue letter on June 27, 1994. (Pl.'s Compl.Ex.B.)

## II. Discussion

### A. Summary Judgment Standard

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the Court must examine all the evidence in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material facts exists. Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. If the moving party does not bear the burden of proof at trial, it may discharge the burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. The moving party is not required to produce evidence showing the absence of genuine issue of material fact on such issues, nor must the moving party support its motion with evidence negating the nonmoving party's claim. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885, 110 S.Ct. 3177, 3187, 111 L.Ed.2d 695 (1990); *United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.), *cert. denied*, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989). Instead, "the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Lujan*, 497 U.S. at 885, 110 S.Ct. at 3187 (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553).

Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). It is not enough for the party opposing a properly supported motion for summary judgment to "rest upon mere allegation or denials of his pleading." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Such evidence need not be in a form admissible at trial to avoid summary judgment. *Id.* The moving party is entitled to judgment as a matter of law if the non-moving party fails to make a sufficient showing of an element of its case with respect to which it has the burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552–53.

### B. Plaintiff's ADA Cause of Action

The ADA prohibits covered entities from discriminating against people with disabilities:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). Under the ADA, the term "disability" means "(A) a physical or mental impairment that substantially limits

one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The regulations promulgated by the EEOC to implement the ADA define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

### 1. Plaintiff's actual disability theory

Plaintiff contends she was actually disabled under the ADA. The EEOC provides a list of three factors to be considered in determining whether an individual is actually "substantially limited" in a major life activity: 1) the nature and severity of the impairment; 2) the duration or expected duration of the impairment; and 3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). According to the EEOC Technical Assistance Manual for the ADA, temporary, non-chronic impairments that do not last for a long time and that have little or no long-term impact usually are not disabilities. 1 EEOC Technical Assistance Manual § 2.2(a)(iii), *reprinted in* Americans with Disabilities Act Manual (BNA) § 90:0501 (1992). A broken leg, for example, would not be a disability under the ADA unless it did not heal properly and resulted in a permanent impairment significantly limiting the person's ability to walk. *Id.*

The EEOC has provided additional factors to be considered when a plaintiff argues that his or her impairment substantially limits the major life activity of working:

> The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i) (emphasis in original); *see also* 1 EEOC Technical Assistance Manual § 2.2(a)(iii) (no "substantial limitation" if person is limited from performing particular job for one employer).

In *Bolton v. Scrivner Inc.,* 3 AD Cases 1089, 1092, 36 F.3d 939 (10th Cir.1994), the Tenth Circuit found that summary judgment for the defendant was appropriate where the plaintiff failed to produce any evidence to suggest that his foot injuries restricted him from performing an entire class of jobs. The *Bolton* court noted the absence of evidence on any of the factors that a court may consider when an individual claims substantial limitation in the major life activity of working. *Id.* at 1091–92, 36 F.3d 939 (discussing 29 C.F.R. § 1630.2(j)(3)(ii) [4]). The court found that the plaintiff had failed to present any evidence concerning his vocational training, the geographical area to which he had access, or the number and type of jobs demanding similar training from which the plaintiff would be disqualified. *Id.*

The ADA defines disability in substantially the same terms as the Rehabilitation Act of 1973. *Bolton,* 3 AD Cases at 1091, 36 F.3d 939. In fact, Congress intended the relevant case law under the Rehabilitation Act to apply to the term "disability" in the ADA. *Id.* (citing the legislative history of the ADA).

Federal courts applying the Rehabilitation Act repeatedly have found that individuals do

---

**4.** Section 1630.2(j)(3)(ii) provides:

In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

not have disabilities as defined by the Rehabilitation Act when their physical or mental impairments prevent them from performing particular jobs but do not preclude them from obtaining other satisfactory employment. For example, in *Jasany v. United States Postal Service*, 755 F.2d 1244 (6th Cir.1985), the Post Office fired the plaintiff after the plaintiff developed eye problems from working at a particular machine. The Sixth Circuit found that the plaintiff failed to show that his eye problems substantially limited one of his major life activities. *Id.* at 1250. Although the eye problems prevented the plaintiff from working at the offending machine, the plaintiff failed to show that his eye problems decreased the plaintiff's "ability to obtain satisfactory employment otherwise." *Id.* at 1248. *See also Welsh v. City of Tulsa*, 977 F.2d 1415, 1417 (10th Cir.1992) ("[W]hile the regulations define a major life activity to include working, this does not necessarily mean working at the job of one's choice."); *Maudling v. Sullivan*, 961 F.2d 694, 698 (8th Cir.1992) (where sensitivity to chemicals precluded lab work but did not limit employment as a whole, plaintiff not disabled); *Elstner v. Southwestern Bell Telephone Co.*, 659 F.Supp. 1328, 1343 (S.D.Tex. 1987) (finding that knee injury limited plaintiff's ability to work as pole climber but holding that injury did not substantially limit life activities).

Defendant disputes Plaintiff's assertion that she was "disabled" under the ADA. According to Defendant, Plaintiff has not presented any evidence showing an impairment that substantially limited any of her major life activities, including working. Defendant, by contrast, has supplied ample evidence showing the absence of any impairment that substantially limited any of Plaintiff's major life activities. For example, Defendant relies on Dr. Brickman's September 15, 1993 report and portions of his deposition transcript. In his report, Dr. Brickman concluded that Plaintiff did not have significant restrictions preventing her from performing essentially the same job for an employer other than the Auto Club. Dr. Brickman added in his deposition that at the time he last saw Plaintiff, he believed that she could have returned to work at the Auto Club if she could have been assigned to a position not requiring contact with the public.

In an effort to show that a genuine issue of material fact does exists about whether her psychological problems rose to the level of a disability under the ADA, Plaintiff points to four sources: 1) Plaintiff's own declaration; 2) the declaration of Plaintiff's husband, Dan Muller; 3) the declaration of Jane Amsler, Ph.D; and 4) Dr. Brickman's August 20, 1993 report.

In her declaration, Plaintiff makes statements that fall into three categories. First, Plaintiff indicates at two places in her declaration that two psychiatrists found that she had psychological problems. At paragraph 30, Plaintiff states that Dr. Gutierrez diagnosed a "post-traumatic stress disorder." (Pl.'s Decl. ¶ 30.) Later, at paragraph 34, Plaintiff states that Dr. Brickman continued her "Temporary Total Disability Status." (Pl.'s Decl. ¶ 34.) In both cases, however, the psychiatrists offered their evaluations at the height of Plaintiff's anxiety, the summer of 1993. Dr. Brickman found in September 1993 that Plaintiff's condition had improved substantially and that she was ready to begin working again, though not necessarily for the Auto Club. Plaintiff's declaration does not contradict Dr. Brickman's assessment that Plaintiff's psychological disorders were in remission as of September 1993.

Second, Plaintiff states in her declaration that Mr. Williams' threats "impacted" her ability to do her job. (Pl.'s Decl. ¶¶ 24, 33, 47.) Even if the Williams incident prevented her from returning to her job as a claims adjuster for Defendant, Plaintiff still would not necessarily have had a disability under the ADA. Plaintiff's psychological impairment would not rise to the level of a disability as defined by the ADA unless it significantly restricted Plaintiff's ability to perform either a class of jobs or a broad range of jobs in various classes. As noted above, "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

Third, explaining her meeting with Raul Green of the EEOC, Plaintiff states in her declaration that the Williams incident "im-

pacted" her relationship with her husband and her children and that it "impacted" her life. (Pl.'s Decl. ¶¶ 47–48.) Plaintiff's sweeping statements are insufficient to create a genuine issue of material fact. That Williams' threats affected Plaintiff does not necessarily mean that they led to psychological problems that, in turn, substantially limited her major life activities.

Plaintiff's husband, Dan Muller, makes two statements of note in his declaration, neither of which raises an issue of material fact. First, he states that "[b]eginning in June 1993, my wife was placed on heavy doses of prescribed medication. Her condition impaired her vision, prevented her from driving, and substantially impaired her ability to take care of our three (3) children. She was sleeping nearly seventeen (17) hours per day." (Dan Muller Decl. ¶ 3.) Mr. Muller's statement, however, does not contradict Dr. Brickman's statement in his September 15, 1993 report that he took Plaintiff off her medication in September 1993. In other words, Plaintiff might have suffered side effects from medication in the summer of 1993, but there is no indication that the side effects of the medication stayed with Plaintiff after September 1993. Second, Mr. Muller states in an oblique and conclusory manner that his marital relations with his wife have suffered. (Dan Muller Decl. ¶ 4.) Mr. Muller does not state the cause of the decline in his marital relations, nor does he say when the Mullers' marital relations first were "affected substantially." Plaintiff also fails to point to any authority or to offer any analysis suggesting that loss of consortium is a "disability" as contemplated by the ADA.

The declaration of Jane Amsler, Ph.D., also fails to raise a genuine issue of material fact. First, Amsler states that "it does appear that ANNE MULLER *suffered* from extreme anxiety and depression as a consequence of the events on the job in April of 1993." (Amsler Decl. ¶ 3 (emphasis added).) In addition, Amsler suggests, though she does not state as a matter of fact, that at least for some period of time, Plaintiff could not take care of herself or her children. (Amsler Decl. ¶ 4.) Amsler does not state how long Plaintiff's anxiety and depression lasted, nor does she say anything to contradict Dr. Brickman's September 15, 1993 assessment that Plaintiff's psychological problems had declined by mid-September and that Plaintiff had begun to put her life back together. Amsler states that Plaintiff now is afraid to go out at night and adds that Plaintiff's "residual and definitely limiting anxiety affects her daily functioning now." (Amsler Decl. ¶ 7.) Amsler fails to make any specific statements about whether Plaintiff's anxiety substantially limited her ability to engage in major life activities. Amsler also fails to offer any insight into Plaintiff's condition in late 1993 or early 1994, the time surrounding Plaintiff's vocational rehabilitation and ultimate termination by Defendant.

Finally, Dr. Brickman's August 20, 1993 report does not indicate that Plaintiff had a permanent or even long-term impairment that substantially limited her ability to work. Dr. Brickman speculates in the August 20, 1993 report that Plaintiff might need "a different job placement, conceivably even some other sort of employment where she no longer had to deal with the public." (Pl.'s Notice of Lodgment Ex. 4 at 1). Dr. Brickman, however, states in the August 20, 1993 report that Plaintiff remained "Temporarily Totally Psychiatrically Disabled" and recommends that she be continued on disability for two more weeks.

■ Plaintiff's psychiatric disability became permanent and stationary less than one month later, and at that time Dr. Brickman found that Plaintiff's impairment did not substantially limit her ability to hold down a job requiring contact with the public. Dr. Brickman's August 20, 1993 report does not create a genuine issue of material fact because it does not suggest anything about the severity of Plaintiff's impairment once it became permanent and stationary.[5] Plaintiff's reliance

---

5. The term "permanent and stationary" is a term of art used for purposes of the California Labor Code with respect to workers' compensation disputes. *See* Cal.Lab.Code § 4061–62 (West Supp. 1995); *Western Growers Ins. Co. v. Worker's Com-* *pensation Appeals Board,* 16 Cal.App.4th 227, 235 (1993) ("A disability ... is permanent when the employee's condition has reached maximum improvement or the condition has become stationary for a reasonable period of time."). The

on the August 20, 1993 report is like a person who suffered a broken leg relying on an x-ray of the fractured bone one week after the doctor placed it in a cast to show that he was disabled.

The evidence on which Plaintiff relies suffers from two shortcomings. First, the evidence regarding the diagnosis of Plaintiff's psychological problems comes from the period before her condition became permanent and stationary. As a result, the evidence fails to dispute Defendant's evidence showing that Plaintiff's psychological impairment was of limited duration and did not substantially limit a major life activity. Second, the statements on which Plaintiff relies to show a substantial limitation on a major life activity do not say anything about Plaintiff's ability or inability to engage in any particular major life activity. That the Williams incident "impacted" Plaintiff's life is insufficient to show a disability under the ADA.

Plaintiff falls especially short in her efforts to show a substantial limitation on her ability to work. Plaintiff has not pointed to any evidence showing that her psychological impairments prevented her from holding a job in the same class as the one she held at the Auto Club before her termination. That Plaintiff did not want to return to the insurance industry does not demonstrate that her impairments met the standard for "disability" under the ADA. Plaintiff has offered no information about the availability in her area of claims adjuster jobs or other jobs requiring similar skills, training, and ability.

In short, Plaintiff has failed to point to evidence suggesting the existence of any genuine issue of material fact about whether she had an actual disability under § 12102(2)(A).

### 2. Plaintiff's "regarded-as" theory of disability

■ Plaintiff argues in her Opposition that even if she was not actually disabled, she was "disabled" under § 12102(2)(C) of the ADA because Defendant regarded her as having a disability. According to the EEOC, "The legislative history of the ADA indicates that Congress intended [the regarded-as] part of the definition to protect people from a range of discriminatory actions based on 'myths, fears and stereotypes' about disability, which occur even when a person does not have a substantially limited impairment." 1 EEOC Technical Assistance Manual § 2.2(a), reprinted in ADA Manual (BNA) § 90:0512 (1992). Plaintiff has presented no evidence to show that Defendant regarded Plaintiff as a person with a disability based on myths, fears, or stereotypes.

Plaintiff argues that Defendant's efforts to accommodate Plaintiff's security concerns demonstrate that Defendant considered Plaintiff disabled. Plaintiff's argument is without merit. Federal courts repeatedly have held that an employer's decision to accommodate an employee or to place the employee on limited duty do not establish a "regarded as" claim under the ADA. For example, in *Thompson v. City of Arlington,* 838 F.Supp. 1137, 1152 (N.D.Tex.1993), the court found that "the mere fact that [the defendant] has put [the plaintiff] on restricted duty until it satisfies itself that she is qualified to return to regular duty does not suggest that [the defendant] regards her as having an impairment of the kind contemplated by the ADA." In *Forrisi v. Bowen,* 794 F.2d 931 (4th Cir.1986), a Rehabilitation Act case, the court affirmed summary judgment for the defendant. In *Forrisi,* the plaintiff argued that the defendant regarded him as handicapped because of his acrophobia (fear of heights). The Fourth Circuit, however, found that the plaintiff had presented no evidence to suggest that the defendant ever doubted plaintiff's ability to work in his chosen field; rather, defendant merely thought plaintiff unfit to work as a utility systems repairman above certain altitudes in its plant. *Id.* at 935.

The District of New Hampshire concluded in a persuasive opinion that the proper test for a "regarded as" claim is "whether the impairment, *as perceived,* would affect the individual's ability to find work across the spectrum of same or similar jobs." *Partlow*

---

fact that a condition is characterized as a "permanent and stationary" disability for purposes of California labor law does not necessarily mean that the condition is a "disability" for purposes of the ADA.

*v. Runyon,* 826 F.Supp. 40, 44 (D.N.H.1993). In *Partlow,* the court found that the plaintiff had failed to show that the Postal Service considered his back injury a handicap under the Rehabilitation Act:

> At most, plaintiff has established that defendant regarded him as unable to satisfy the requirements of a particular mechanic's position due to his particular back problems. This does not render him handicapped under, nor does it entitle him to protection of the Act.

*Id.* at 46.

In the case at hand, Plaintiff has failed to point to any evidence suggesting that Defendant considered her disabled under the ADA. Defendant's efforts to accommodate Plaintiff's safety concerns and ultimately to help her find employment outside the Auto Club do not suggest that Plaintiff has a valid "regarded as" claim. Plaintiff's workers' compensation attorney and a representative of Defendant agreed that Plaintiff should receive vocational training after Dr. Brickman stated that Plaintiff could not return to her job at the Auto Club. By its actions, Defendant never conceded that Plaintiff was unfit for work as a claims adjuster or that Plaintiff's impairment, as perceived by Defendant, would preclude her from obtaining employment consistent with her training and experience. Instead, all of the evidence before this Court shows that Defendant's efforts at accommodation were responses to Plaintiff's own concerns about her safety and her wishes to enter a new line of work.

In short, Plaintiff has failed to raise a genuine issue of material fact about whether Defendant regarded her as disabled under the ADA.

#### 3. Summary

Since Plaintiff has failed to show the existence of a genuine issue of material fact on either an actual or "regarded-as" theory of disability, Defendant is entitled to summary judgment on Plaintiff's first cause of action.

### C. Plaintiff's State–Law Causes of Action

This Court has ruled that Defendant is entitled to summary judgment on Plaintiff's only federal claim—Plaintiff's first cause of action for "violation of the Americans with Disabilities Act." As a result, this Court now declines to exercise its discretionary authority to retain jurisdiction over Plaintiff's causes of action based on state law. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Schneider v. TRW, Inc.,* 938 F.2d 986, 993–94 (9th Cir.1991); *Wren v. Sletten Const. Co.,* 654 F.2d 529, 536 (9th Cir.1981) (proper exercise of discretion requires dismissal of state claims unless extraordinary circumstances justify their retention). Plaintiff's second, third, fourth, and fifth causes of action are dismissed without prejudice to her refiling those claims in an appropriate California court.

### III. Conclusion

For the reasons given above, Defendant's motion for summary judgment is GRANTED IN PART. Defendant is entitled to summary judgment on Plaintiff's first cause of action. Having granted summary judgment for Defendant on Plaintiff's only cause of action based on federal law, this Court declines to retain jurisdiction over Plaintiff's remaining causes of action based on state law. Plaintiff's second through fifth causes of action are DISMISSED WITHOUT PREJUDICE to Plaintiff refiling them in an appropriate state court.

IT IS SO ORDERED: