**Cheryl CLAPP, Plaintiff,**

**v.**

**NORTHERN CUMBERLAND
MEMORIAL HOSPITAL,
Defendant.**

**No. 96–228–P–C.**

United States District Court,
D. Maine.

April 24, 1997.

Michael J. Waxman, Portland, ME, for
Plaintiff.

Michael Poulin, Skelton, Taintor & Abbott,
Auburn, ME, for Defendant.

*MEMORANDUM AND ORDER GRANT-
ING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT*

GENE CARTER, District Judge.

Now before the Court for decision is De-
fendant's Motion for Summary Judgment
(Docket No. 4). Plaintiff Cheryl Clapp sues
her employer, Defendant Northern Cumber-
land Memorial Hospital, alleging violations of
the Americans with Disabilities Act, 42
U.S.C. § 12101 *et seq.* (Count I), and the
Maine Human Rights Act, 5 M.R.S.A. § 4551
*et seq.* (Count II). For the reasons ex-
plained below, the Court will grant the mo-
tion.

*I. FACTS*

Plaintiff Cheryl Clapp is a staff nurse at
Northern Cumberland Memorial Hospital
("NCMH"), where she has been employed
since May 1987. Clapp Affidavit ¶ 2. In 1992,
after attempting to conceive a child for more
than two years, Plaintiff was diagnosed with
endometriosis and underwent surgery for the
removal of cysts. *Id.* ¶¶ 3, 7. Plaintiff be-
came pregnant in July of 1992 but miscarried
shortly thereafter. *Id.* ¶ 9. In August of
1994, a doctor informed Plaintiff and Plain-
tiff's husband that the couple had less than a
two percent chance of conceiving per cycle.
*Id.* ¶ 12.

In July 1995, Plaintiff submitted a written
request for a twelve-week maternity leave of
absence to adopt a child. *Id.* 18, 25; Clapp
Dep. at 12. In order to receive compensation
during her leave of absence, Plaintiff also
sought to use her accrued sick leave. *Id.*
¶ 20.

Defendant granted Plaintiff's request for a
twelve-week leave of absence, but denied
Plaintiff's request to use accrued sick leave.
Clapp Aff. ¶ 26; Clapp Dep. at 8–9. Defen-
dant allows employees to use paid sick leave
only in cases of sickness, injury, pregnancy,

or childbirth. Wiesendanger Aff. ¶ 11. It is undisputed that, at the time Plaintiff requested sick leave, she was not sick or injured in any way and that Plaintiff's adopted child was healthy. Clapp Dep. at 11–12; Wiesendanger Aff. ¶ 9. During Plaintiff's leave of absence in the summer of 1995, her infertility did not interfere in any way with her ability to care for herself, perform manual tasks, walk, see, hear, speak, breathe, learn, or work. Clapp Dep. at 13.

Plaintiff did not at any point, between the time she requested sick leave and the date she commenced this lawsuit, inform her supervisor at the hospital that she had a disability. Clapp Dep. at 10, 11. Plaintiff did not inform the hospital staff that she was infertile, nor did she tell anyone at NCMH that she felt she had a disability. *Id.* at 11, 12. John Wiesendanger, the chief executive officer of NCMH, first learned of Plaintiff's endometriosis more than one year after he made the decision to deny her request for sick leave benefits. *Id.* ¶ 7.

## II.  STANDARD OF REVIEW

The Court of Appeals for the First Circuit has recently explained once again the workings and purposes of the summary judgment procedure:

> Summary judgment has a special niche in civil litigation. Its "role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), *cert. denied* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money, and permitting courts to husband scarce judicial resources.

> A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) ....

> Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trialworthy issue exists. *See National Amusements [v. Town of Dedham],* 43 F.3d [731,] 735 [ (1st Cir.1995) ]. As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Garside [v. Osco Drug. Inc.],* 895 F.2d [46,] 48 [ (1st. Cir. 1990) ]. Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be "material" and the dispute over it must be "genuine." In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. *See [United States v.] One Parcel [of Real Property with Buildings],* 960 F.2d [200,] 204 [ (1st Cir.1992) ]. By like token, "genuine" means that "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party...." *Id.*

> When all is said and done, the trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor," *Griggs–Ryan [v. Smith],* 904 F.2d [112,] 115 [ (1st Cir.1990) ], but paying no heed to "conclusory allegations, improbable inferences, [or] unsupported speculation," *Medina–Munoz [v. R.J. Reynolds Tobacco Co.],* 896 F.2d [5,] 8 [ (1st Cir.1990) ]. If no genuine issue of material fact emerges, then the motion for summary judgment may be granted.

> ... [T]he summary judgment standard requires the trial court to make an essentially legal determination rather than to engage in differential factfinding ....

*McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 314–15 (1st Cir.1995).

## III.  DISCUSSION

■ Plaintiff asserts that her infertility constitutes a "disability" under the Ameri-

cans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and that the hospital staff was aware of her disability and discriminated against Plaintiff by depriving her of sick leave benefits which, Plaintiff alleges, the hospital regularly extends to employees who are fertile. Defendant disputes the argument that Plaintiff's condition constitutes a "disability" under the ADA, citing *Krauel v. Iowa Methodist Medical Center,* 95 F.3d 674 (8th Cir.1996), and *Zatarain v. WDSU–Television, Inc.,* 881 F.Supp. 240 (E.D.La.1995), *aff'd,* 79 F.3d 1143 (1996), both of which held that reproduction is not a "major life activity" under the ADA. Defendant maintains, therefore, that even if Plaintiff is infertile and is substantially impaired in her ability to reproduce, she does not have a "disability" under the ADA.

As Plaintiff points out, a judge in this district recently held that reproduction constitutes a "major life activity" for the purposes of the ADA. See *Abbott v. Bragdon,* 912 F.Supp. 580 (D.Me.1995), *aff'd,* 107 F.3d 934 (1997). However, the Court need not reach the issue of whether Plaintiff had a "disability" under the ADA because, even assuming that Plaintiff's condition may be construed as a "disability," Plaintiff has failed to demonstrate that there is any genuine issue as to whether Defendant had any knowledge of her disability. As Defendant notes, other courts confronting this issue have held that in order to find that an employer discriminated against an employee "because of" the employee's disability under the ADA[1] the employer must be properly charged with knowledge or notice of the employee's disability. *See Hedberg v. Indiana Bell Telephone Co. Inc.,* 47 F.3d 928, 932 (7th Cir.1995) (employer not liable for firing employee "because of" disability unless employer knows of disability; mere conjecture that employer knew of disability is not sufficient to raise genuine issue regarding employer's knowledge); *see also Morisky v. Broward County,* 80 F.3d 445, 448 (11th Cir.1996)

(plaintiff's "vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice," and plaintiff, therefore, failed to establish *prima facie* case under ADA).

This Court, after careful study of the record, can only conclude reasonably that there is no *evidence* in the record showing, or tending to show, that Defendant knew, or had notice, that Plaintiff was infertile at the time it decided to deny Plaintiff's request for sick leave. Kathiann Shorey, the Nurse Executive and Director of Nursing Services at NCMH, asserts that "[a]t no time prior to the filing of this lawsuit did Ms. Clapp tell me, or did I learn from any other source, that she was infertile, that she had endometriosis, or that she considered herself to be disabled or impaired in any way." Shorey Aff. ¶ 8. Similarly, Daniel Michaud, the person responsible for supervision and oversight of personnel matters at NCMH, has stated that, "[w]hen I made the decision [to deny Ms. Clapp's request for paid sick leave], I did not know or believe that Ms. Clapp had any kind of medical condition or that she was infertile." Michaud Aff. ¶ 7. John Wiesendanger, who made the final decision that Plaintiff was not eligible for paid sick leave, asserts that

> [a]t the time I made the decision [to deny Plaintiff's request for sick leave], I did not know or believe that Ms. Clapp had any type of disability. In my discussion with her and her husband, Ms. Clapp never mentioned any medical condition, and never stated or suggested that she had a disability.
>
> ... [Ms. Clapp and her husband] spoke in terms of the rights of adopting parents, not the rights of disabled persons....

Wiesendanger Aff. ¶ 4, 5.

Plaintiff states in her affidavit that "I informed Kathi Shorey, Director of Nursing, of our unsuccessful attempts to conceive."[2]

---

1. *See* 42 U.S.C. § 12112(a).

2. NCMH does not dispute Plaintiff's statement. According to Shorey, Plaintiff informed Shorey that Plaintiff had undergone some type of gynecological surgery, and that "[Plaintiff] and [Plaintiff's] husband were trying to get pregnant,

and had been unsuccessful." Shorey Aff. ¶¶ 5, 6. However, Shorey states that

> [b]ased on my personal experience, and professional experience as a nurse, I do not interpret the fact that a couple has been trying to get pregnant and has been unsuccessful as meaning

Clapp Aff. ¶ 14. Assuming this statement to be true, it does not, on its face, imply that *Plaintiff's* physical condition was impairing the couple's ability to conceive, as opposed to her husband's physical condition. Moreover, it does not indicate that Plaintiff has a disability. Plaintiff asserts that she informed Ms. Shorey of her pregnancy and miscarriage in 1992, and that "[m]y nurse manager at the time, Nancy Perillo, knew about my surgery ..." *Id.* ¶ 15. Evidence that the Plaintiff informed a supervisor or manager about a miscarriage and a surgical procedure does not constitute evidence that such individuals knew, or had constructive knowledge, that Plaintiff was infertile. Miscarriages and gynecological surgeries are relatively common events which do not necessarily imply that Plaintiff was infertile. Even combining the information of the miscarriage and surgery with the statement that the couple was having trouble conceiving, this information is not sufficient to put Plaintiff's employer on constructive notice that Plaintiff had a disability. First, the employer's knowledge that Plaintiff had conceived and then miscarried leads to the conclusion that Plaintiff was capable of conceiving. Second, because Plaintiff's infertility is invisible to the naked eye and, at our current state of technology, the act of conception involves more than one individual, the Court cannot, under these circumstances, conclude that these facts alleged by Plaintiff raise a genuine issue as to whether NCMH had knowledge, constructive or

otherwise, that Plaintiff was infertile or disabled.

■ In her affidavit, Plaintiff swears that, it is "true based on [my] own knowledge, information or belief," [3] that "*I am convinced that at least Kathi Shori, and very likely others at the Hospital, specifically [the Nurse Manager] Judy Barlow, knew that I could not conceive and carry my own child; I am sure they knew I was and am infertile.*" (Emphasis added.) Clapp Aff. at 2 ¶ 17–18, 5. The definitive issue to be resolved here is not whether *Plaintiff* is convinced of the operative fact but, rather, whether she has put forth *evidence* the Court can find sufficient to permit a *fact-finder* to be convinced of the operative fact. Plaintiff has failed to demonstrate that there remains a genuine issue as to Defendant's knowledge because Plaintiff has produced no evidence that is based upon Plaintiff's personal knowledge that Defendant knew of, or had notice of, Plaintiff's disability.[4]

In deciding a motion for summary judgment, the Court may not give weight to Plaintiff's mere conjecture: "Neither wishful thinking ... nor conclusory responses unsupported by evidence ... will serve to defeat a properly focused Rule 56 motion." *Griggs–Ryan v. Connelly,* 904 F.2d 112 (1st Cir.1990) (citing *Garside [v. Osco Drug. Inc.],* 895 F.2d [46,] 49 [ (1st. Cir.1990) ] and *Ayer v. United States,* 902 F.2d 1038, 1044–45 (1st Cir. 1990)). Rule 56(e) requires that "opposing affidavits shall be made on personal knowl-

---

that the wife is infertile or has some medical impairment. It may be that there is no medical problem, or it may be that the problem is with the husband.
*Id.* ¶ 7.

**3.** The jurat reads, in relevant part, that Cheryl Clapp "made oath that the foregoing statements made by her are true based on her own knowledge, information or belief and insofar as upon information and belief, ... she believes this information and belief to be true and accurate." *See* Clapp Aff. at 5.

**4.** Plaintiff contends that Defendant waived its right to argue that supervisors and managers closest to the Plaintiff did not know about her fertility problems. The Court is not persuaded by Plaintiff's reasoning.
  Plaintiff confuses a party's right to raise an argument with a party's right to produce additional factual evidence in support of an argument

already raised. The case Plaintiff cites, *Grant v. News Group Boston, Inc.,* 55 F.3d 1, 7 (1st Cir. 1995), and the case cited therein, *Sandstrom v. ChemLawn Corp.,* 904 F.2d 83, 87 (1st Cir.1990), hold that "arguments" omitted in an opening brief and raised only in a reply brief are waived and a court should disregard them. Here, however, Defendant did, in fact, argue in its opening brief for summary judgment that the Defendant lacked knowledge of Plaintiff's disability. Defendant's reply brief merely adds supplementary evidence—specifically, the affidavits of Kathiann Shorey and Daniel Michaud—in support of that argument. Hence, the Court finds that Defendant did not waive its right to argue that Defendant lacked knowledge of Plaintiff's disability, and the Court accepts the Shorey and Michaud affidavits as proper evidence to be considered in ruling on this motion.

edge." Fed.R.Civ.P. 56(e). Plaintiff's assertions, based upon her "knowledge, information and belief," that she is "convinced" that at least Kathi Shorey and "very likely" Judy Barlow knew of Plaintiff's inability to conceive and that she is "sure they knew" of her infertility are, therefore, insufficient to create a triable issue of fact.[5] See *Sheinkopf v. Stone* 927 F.2d 1259, 1271 (1st Cir.1991) (citing *Automatic Radio Mfg. Inc. v. Hazeltine Research. Inc.*, 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1949)) ("It is apodictic that an 'affidavit ... made upon information and belief ... does not comply with Rule 56(e).' "). Since the record will not support Plaintiff's allegation that Defendant knew of Plaintiff's disability, the Court concludes that Plaintiff has failed to establish a *prima facie* case of discrimination "because of" a disability under the ADA.

Similarly, Plaintiff's claim under the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. §§ 4551 *et seq.*, fails, since "interpretation of the ADA and of the Maine Human Rights Act have proceeded hand in hand," *Soileau v. Guilford of Maine*, 105 F.3d 12, 14 (1st Cir. 1997), and hence, the "necessary conclusions as to the Plaintiff's MHRA claim flow directly from this [ADA] analysis." *See Soileau v. Guilford of Maine*, 928 F.Supp. 37, 45 (D.Me. 1996).

### IV. CONCLUSION

It is therefore *ORDERED* that Defendant's Motion for Summary Judgment be, and it is hereby, *GRANTED* on both Counts I and II of the Complaint. It is *FURTHER ORDERED* that Counts I and II be, and they are hereby, *DISMISSED*.

---

5. The Court does rely upon Plaintiff's affidavit as support for several assertions of fact in section I, above. However, the factual· assertions for which the Court cites to Plaintiff's affidavit involve matters that are clearly within Plaintiff's personal knowledge, in contrast to the assertions at issue here regarding Defendant's knowledge of

Plaintiff's disability. *See Spickler v. Dube*, 635 F.Supp. 317, 321 (D.Me.1986), *aff'd*, 852 F.2d 564 (1988), *cert. denied*, 489 U.S. 1057, 109 S.Ct. 1322, 103 L.Ed.2d 591 (1989) (deficient jurat may be cured by proper declaration in body of affidavit if averred statements are clearly within affiant's knowledge).